**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | NO. 05-56-10 |
| | : | |
| **EDWARD BALL** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                          **January 6, 2021**

Prosecutors and accused parties enter into detailed plea agreements presumably because each expects a benefit from a plea. We enforce plea agreements after extensive questioning of the accused during a plea hearing to ensure a voluntary and knowing plea and a full understanding of the waived rights. A defendant often agrees to waive challenging his sentence in exchange for avoiding trial by pleading guilty with limited exceptions for challenging sentences above the statutory limits or sentencing guidelines or for ineffective assistance of counsel. We today review a motion from a formerly incarcerated man seeking to reduce his ten-year term of supervised release by seven years, citing his rehabilitation and advanced age. But he agreed at age fifty-five to voluntarily and expressly waive all rights to challenge this sentence or any other matter relating to the prosecution under any provision of law with limited exceptions not applying today. He waived his present request. Judge Stengel confirmed his voluntary and knowing waiver before accepting his plea. Absent evidence of injustice, we enforce his negotiated waiver of a right reduce his supervised release as fully explained to him during his plea and then confirmed to be knowingly and voluntarily accepted.

I.     Facts

Our Grand Jury returned a thirty-five count indictment against nineteen defendants in February 2002 for crimes related to a heroin conspiracy.[1]  The Grand Jury charged Edward Ball with five counts: one count of conspiracy to distribute more than 1 kilogram of heroin within 1000 feet of a federally protected area; one count of using a communication device in furtherance of drug activity; two counts of distributing heroin; and one count of possessing heroin with the intent to distribute.[2]  Mr. Ball entered a plea agreement with the United States to plead guilty to conspiracy and using a communication device in furtherance of drug activity.[3]  In exchange, the United States agreed to dismiss the possession and distribution charges.[4]

Mr. Ball signed his plea agreement confirming:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right or appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. §1291, 28 U.S.C. §2255, or any other provision of law.  This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.[5]

Two lines above Mr. Ball's signature line, the plea agreement confirms Mr. Ball's understanding, "I understand I have waived my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement."[6]

At the guilty plea colloquy, Judge Stengel asked the United States to summarize the terms of the plea agreement.[7]  The Assistant United States Attorney summarized, "[t]he defendant agrees to waive all rights to appeal or collaterally attack his conviction or sentence or any other matter pertaining to the prosecution."[8] Later in the colloquy, Judge Stengel reviewed the appellate waiver with Mr. Ball.  He asked, "Okay, by pleading guilty under this agreement

2

you'd give up all those rights to appeal, that means you can't appeal from my sentence, unless I sentence you above the guidelines or above the maximum, which is going to be hard because the maximum is life, and you could also appeal if the Government appealed, do you understand that?"[9]  Mr. Ball confirmed he understood.[10]  Judge Stengel also specified, "[a]nd, that also means you give up your right to file habeas corpus" and explained habeas corpus to Mr. Ball.[11]  Mr. Ball confirmed he understood.[12]

The Assistant United States Attorney also summarized the sentencing implications for Mr. Ball's guilty plea.  Judge Stengel asked Mr. Ball whether he understood "the total maximum is life with a mandatory minimum of ten years . . . up to a lifetime of supervised release," and Mr. Ball responded, "I understand, yeah."[13]  Judge Stengel asked Mr. Ball a series of questions to ascertain whether Mr. Ball's guilty plea was knowing and voluntary,[14] and, satisfied with Mr. Ball's answers, he accepted the plea.[15]

Judge Stengel later sentenced Mr. Ball to concurrent prison terms of 180 and 48 months, followed by concurrent ten and one year terms of supervised release.[16]  Mr. Ball served his prison sentence. He began his term of supervised release on March 30, 2018. His supervised release will expire on March 30, 2028.[17]  Since his release, Mr. Ball has maintained steady employment and has otherwise complied with the terms of his release, which include drug testing, in-person reporting, and paying a one-time special assessment.[18]  He also reports he has a good relationship with his probation officer and has surrounded himself with positive support and stability to ensure his continued success.[19]  At sixty-eight years old, he expresses no desire to return to his past criminal activities.[20]

**II.     Analysis**

Mr. Ball now asks we terminate supervised release seven years early, arguing his good behavior and age demonstrate a low likelihood of recidivism.[21] The United States opposes, arguing the appellate waiver in Mr. Ball's plea agreement confirmed at length before Judge Stengel bars Mr. Ball from challenging his sentence, and even if it did not, Mr. Ball has not demonstrated the terms of supervised release impose an undue burden on him, nor has he demonstrated changes in his circumstances warrant early termination.[22] While we applaud Mr. Ball's rehabilitation and hope for his continued success in the future, we agree with the United States the appellate waiver bars his petition.

Our Court of Appeals directs us to enforce an appellate waiver in a plea agreement "only 'if we conclude (1) that the issues [a defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice.'"[23] We find Mr. Ball's petition falls within the scope of his knowing and voluntary waiver, and we further find enforcing the waiver would not result in a miscarriage of justice.

Mr. Ball's petition falls within the scope of his appellate waiver. In *United States v. Oyerinde*, our Court of Appeals reviewed Judge Pappert's order denying early termination of supervised release to a petitioner whose plea agreement contained an identical appellate waiver to the one contained in Mr. Ball's plea agreement.[24] Like Mr. Ball's appellate waiver, the appellate waiver in *Oyerinde* provided:

> [T]he defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, *112 28 U.S.C. § 2255, or any other provision of law.[25]

4

On appeal, the United States invoked the appellate waiver for the first time, and the petitioner argued the appeal fell outside the scope of the waiver since he did not appeal or collaterally attack under one of the identified statutes.[26] Our Court of Appeals rejected the petitioner's argument explaining, "[a]t its core, Defendant's motion for early termination of supervised release challenged his original sentence by seeking to shorten the term of his supervised release."[27] The Court of Appeals held, "Defendant's appeal from the denial of the motion for early termination of supervised release likewise implicates his sentence," and it granted the United States' "motion to enforce the appellate waiver because Defendant's challenge to his supervised release term falls within the scope of the appellate waiver."[28] Consistent with our Court of Appeals' decision in *Oyerinde*, we find the identical appellate waiver provision in Mr. Ball's plea agreement bars his petition.[29]

Mr. Ball knowingly and voluntarily agreed to the appellate waiver. Judge Stengel closely reviewed Mr. Ball's plea agreement with him during the plea colloquy. He explained to Mr. Ball he faced life imprisonment and a potential life-term of supervised release. He also explained to Mr. Ball the plea agreement waived Mr. Ball's rights to appeal his sentence. Mr. Ball confirmed he understood these terms. Judge Stengel also asked Mr. Ball several questions about whether his plea was knowing and voluntary, and Mr. Ball answered these questions to Judge Stengel's satisfaction. Mr. Ball does not offer a basis for us to question the voluntariness of his plea, and we do not find any from our review of the record.

Enforcing the appellate waiver also does not work a miscarriage of justice. Our Court of Appeals instructs, "the term 'miscarriage of justice' is more a concept than a constant."[30] Nevertheless, the Court of Appeals directs us to consider several factors in determining whether enforcing a waiver would work a miscarriage of justice, including: "the clarity of the error, its

5

gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."[31] Our Court of Appeals cautions us to apply the miscarriage of justice exception "sparingly and without undue generosity."[32]

Mr. Ball does not claim error in Judge Stengel's sentence, nor does he claim a change in the applicable sentencing guidelines or statutes or a newly discovered fact. He does not demonstrate how the terms of supervised release have negatively interfered with his life, nor does he identify changes in his life rendering the terms of his release unduly restrictive or burdensome. While we understand Mr. Ball, at sixty-eight years old, may be less likely to return to his life of crime, Judge Stengel knew Mr. Ball's age at the time of sentencing and knew how old Mr. Ball would be during his supervised release. Judge Stengel, familiar with Mr. Ball's long criminal history and the seriousness of the charges against him, thought it appropriate to sentence then fifty-five-year old Mr. Ball to 180 months imprisonment followed by a ten-year term of supervised release. We have no basis to find enforcing this sentence to be a miscarriage of justice.

### III. Conclusion

We deny Mr. Ball's petition for early termination of supervised release.

---

[1] ECF Doc. No. 1.

[2] *Id.*

---

[3] ECF Doc. No. 915 at 2.

[4] *Id.* at 2-3.

[5] *Id.* at 6.

[6] *Id.* at 9.

[7] *Id.* at 19.

[8] *Id.*

[9] *Id.* at 30.

[10] *Id.*

[11] *Id.* at 31-34.

[12] *Id.*

[13] *Id.* at 21.

[14] *See, e.g.*, *id.* at 21-22.

[15] *Id.* at 47.

[16] ECF Doc. No. 622 at 2-3

[17] ECF Doc. No. 950 at 11.

[18] *Id.*; ECF Doc. No. 940.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] ECF Doc. No. 950.

[23] *United States v. Damon*, 933 F.3d 269, 272 (3d Cir. 2019) (quoting *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008).

[24] 784 Fed. App'x 111 (2019).

[25] *Id.* at 111-12.

[26] The difference in the procedural posture presented in *Oyerinde* does not change our analysis because the Court of Appeals seemed to acknowledge the United States could have raised the appellate waiver and prevailed in the District Court. *See id*. at 113 n.12 ("The Government's decision not to invoke the waiver before the District Court could be explained by a view that the Government decided that the best way to proceed before the District Court was to address the merits. This, however, should not preclude them from relying on the appellate waiver to bar further review.")

[27] *Id.*

[28] *Id.*

[29] We are also mindful of the *Crews* decision in this District from last November finding the appellate waiver identical to the provision at issue here and in *Oyerinde* "does not constitute an appeal or collateral attack of [the petitioner's] sentence, which would be covered by the appellate waiver and, accordingly, we conclude that [the petitioner] did not waive his right to bring the instant Motion in his Guilty Plea agreement." *United States v. Crews*, No. 10-663-5, 2020 WL 6581430 (E.D. Pa. Nov. 10, 2020). In reaching this conclusion, our colleague Padova distinguished our Court of Appeals' opinions in *United States v. Goodson*, 544 F.3d, 529 (3d Cir. 2008) and *United States v. Laine*, 404 F. App'x 571 (3d Cir. 2010), but did not address the Court's 2019 decision in *Oyerinde*. In light of *Oyerinde*, we respectfully disagree with the holding in *Crews* as the nature of a motion to terminate supervised release is an attempt to change or alter a sentence. Mr. Ball is asking us to change his sentence. He waived this right absent the United States' consent.

[30] *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)).

[31] *Id.* (quoting *Teeter*, 257 F.3d at 26).

[32] *Id.* (quoting *Teeter*, 257 F.3d at 26).